UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES LOUP | * | CIVIL ACTION NO. 23-4936 |
| | * | |
| VERSUS | * | SECTION: "D"(1) |
| | * | |
| BELLSOUTH TELECOMMUNICATIONS LLC D/B/A AT&T LOUISIANA, ET AL. | * | JUDGE WENDY B. VITTER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

*************************************

ORDER AND REASONS

Before the Court is the plaintiff's Motion for Leave to File Second Supplemental and Amending Petition for Damages. (Rec. Doc. 23). For the following reasons, the Motion is DENIED.

Background

Plaintiff James Loup alleges that on September 17, 2021, he fell in an unmarked hole in his driveway resulting in his injury. He alleges that the hole was dug by two employees of BellSouth Telecommunications, Inc. d/b/a AT&T Louisiana ("AT&T") and/or its subcontractor Deviney Construction Company, who were installing fiber optic cable and boxes in his neighborhood and immediately in front of his home. He alleges that the employees dug the hole in his driveway to plant equipment, and then negligently failed to cover it up, fill it in, or otherwise mark its presence and the danger it presented.

Mr. Loup filed suit against AT&T, Deviney, and the unnamed employees in Louisiana state court on September 15, 2022. In July 2023, Deviney filed a Third Party Demand against Hector Vasquez Anaya dba LS 1983 and Benchmark Insurance Company, alleging that Vasquez Anaya had contracted with Deviney to perform the fiber optic cable work at issue and is liable to indemnify Deviney. Benchmark is alleged to be Vasquez Anaya's commercial general liability

1

insurer. On August 30, 2023, AT&T removed to this Court following a request for admission response by Mr. Loup indicating that the amount in controversy was over $75,000. Prompted by the court, Deviney sought entry of default as to Vasquez Anaya and Benchmark in April 2024. In June 2024, the District Court issued a scheduling order. Trial is scheduled to begin on January 27, 2025. The deadline to amend pleadings was July 9, 2024.

On June 29, 2024, Mr. Loup filed the present Motion for Leave to File Second Supplemental and Amending Petition for Damages. He seeks to join Jefferson Parish as a defendant, asserting that he "just recently discovered that although the incident occurred on his driveway, the Property between the sidewalk and the street is under the care, custody, and control of Jefferson Parish." He seeks to allege that Jefferson Parish knew or should have known about the protocol for the installation of fiber optic cable and boxes on the property and failed to keep the premises safe.

AT&T and Deviney oppose the motion. They argue that Mr. Loup is merely attempting to defeat federal jurisdiction, that he has been dilatory, and that his claims against Jefferson Parish have prescribed. In reply, Mr. Loup argues that the cause of action has not prescribed because Jefferson Parish, AT&T, and Deviney are solidary obligors and a timely filed suit against one interrupts prescription against them all. He insists he has not been dilatory and that it was reasonable for Mr. Loup and his counsel to assume, at first, that he was injured on his own property. He says that any delay was due to a mistake.

Law and Analysis

1. *Standard for Leave to Amend*

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties

or by leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 177 (5th Cir. 2016) (quoting Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003).

Additionally, the law requires that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Because the Court's decision on a motion for leave to amend to add a non-diverse defendant will affect its jurisdiction over the matter, the Court must "scrutinize that amendment more closely than an ordinary amendment." Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). "[I]n deciding whether to grant leave to amend, courts must balance the defendant's interest in retaining the federal forum with plaintiff's competing interest in avoiding parallel federal/state lawsuits." Williams v. Carmean, No. CIV. A. 99-1095, 1999 WL 717645, at *1 (E.D. La. Sept. 13, 1999). The Fifth Circuit has also instructed courts to consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for

3

amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." Hensgens, 833 F.2d at 1182.

"When courts analyze the first Hensgens factor, they consider 'whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.'" Tomlinson v. Allstate Indem. Co., No. CIV.A.06-0617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006) (quoting Schindler v. Charles Schwab & Co., No. CIV.A.05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005)). "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." Schindler, 2005 WL 1155862, at *3; see Noble v. Norfolk S. Corp., No. CIV.A. 02-3233, 2003 WL 1618590, at *3 (E.D. La. Mar. 26, 2003) ("As long as the plaintiff states a valid claim against the new defendants, the principal purpose is not to destroy diversity jurisdiction."). In determining whether the plaintiff states a claim against the proposed non-diverse defendant, courts employ the same standard used when considering whether a non-diverse defendant was fraudulently joined in the first place. Wells v. Medtronic, Inc., 171 F. Supp. 3d 493, 506 (E.D. La. 2016) (relying on Cobb v. Delta Exports, Inc. to hold that the "fraudulent joinder" test is used when determining whether to allow a pleading amendment that would join a non-diverse defendant and destroy the court's diversity jurisdiction); Noble, 2003 WL 1618590, at *3 (using the "fraudulent joinder" standard to determine whether the plaintiff's primary purpose in joining a non-diverse defendant was to defeat the court's diversity jurisdiction); see Cobb, 186 F.3d at 677-78 (explaining in dicta that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.,* a request fraudulently to join a party) would never be granted").

Thus, employing the "fraudulent joinder" test, the court must determine whether there is "any possibility of recovery under state law against" the proposed defendant. See Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995); Noble, 2003 WL 1618590, at *4 (E.D. La. Mar. 26, 2003). Typically, the court will conduct a Rule 12(b)(6) type analysis of the allegations in the complaint. Wells, 171 F. Supp. 3d at 506. But, "in rare cases, if 'a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" Id. (quoting Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004)) (alteration in original). The burden of persuasion lies with the party who claims the proposed joinder is improper, and it is a heavy burden. Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 765 (5th Cir. 2016). Accordingly, the court "view[s] 'all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff' and resolve[s] '[a]ny contested issues of fact and any ambiguities of state law' in the plaintiff's favor." Id. (quoting Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 765 (5th Cir. 2016)) (third alteration in the original).

2. *Liability of Municipality for Defect*

The Louisiana Civil Code provides the standard for liability of a premises owner:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1. Louisiana statute also limits liability of a public entity for damages caused by things in its care and custody to situations where "the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence." La. Stat. Ann. § 9:2800(B). Thus, to prevail on a claim against a public entity, courts

5

require that "a plaintiff must establish: (1) the entity's custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity's actual or constructive notice of the defect; and (4) causation." Butkiewicz v. Evans, 06-236 (La. App. 5 Cir. 9/26/06), 943 So. 2d 509, 513; see Polk v. City of Alexandria, 2023-613 (La. App. 3 Cir. 2/14/24), 380 So. 3d 749, 753. "One is presumed to have constructive notice of a defect or dangerous condition when it is shown to have existed for such a long period of time that knowledge thereof can be presumed, or that it can be said that one should have had knowledge of the condition." Robinson v. Otis Condo. Ass'n, Inc., 20-359 (La. App. 5 Cir. 2/3/21), 315 So. 3d 356, 361 (quoting Dufrene v. Gautreau Fam., LLC, 07-467 (La. App. 5 Cir. 2/22/08), 980 So. 2d 68, 80).

3. *Prescription*

Tort claims are subject to a liberative prescription of one year that runs from the day injury or damage is sustained. La Civ. Code art. 3492. But, "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." Id. art. 2324(C). Where liability is not solidary,[1] "liability for damages caused by two or more persons is a joint and divisible obligation." Id. art. 2324(B).

4. *Analysis*

There is no dispute that the proposed amendment here would join a non-diverse defendant and destroy this Court's diversity jurisdiction. Accordingly, the court considers the Hensgens factors in determining whether amendment is appropriate at this stage.

---

[1] Mr. Loup argues that Jefferson Parish and the current defendants would be solidarily liable but offers no legal basis for this assertion. Under article 2324(A), "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." There is no suggestion of intentional or willful conduct by Jefferson Parish. In any event, as noted, prescription is similarly interrupted as to joint obligors under article 2324(C).

### a. Purpose of the Amendment

Defendants argue that the purpose of Mr. Loup's amendment is merely to defeat this court's diversity jurisdiction. They point to Mr. Loup's delay in asserting the claim as evidence of this purpose. As discussed further below in consideration of the "dilatory" factor, Mr. Loup's delay is concerning. But it is not clear that the delay shows an intent to defeat diversity jurisdiction.

Courts typically find that where the plaintiff has stated a claim, the primary purpose of the amendment is not to defeat diversity. Defendants contend that Mr. Loup's claim has prescribed. Indeed, it has been more than one year after the date of the accident. However, because Mr. Loup timely filed suit against AT&T and Deviney, prescription has been interrupted as to alleged joint tortfeasors.[2]

Although Mr. Loup alleges that Jefferson Parish is a joint tortfeasor with the existing defendants, he has failed to state a plausible claim against it. He has not alleged a single fact to support finding that Jefferson Parish had actual or constructive knowledge of the alleged defect, as required to establish liability under art. 2317.1. He merely asserts that Jefferson Parish "knew or should have known" about the protocol for installation of fiber optic cable. Not only is this statement conclusory and devoid of any factual support, it wholly fails to address Jefferson Parish's knowledge of the particular defect at issue here—the hole. It has been nearly three years since the injury occurred and nearly two years since Mr. Loup filed suit. Despite the months-long opportunity to conduct discovery, Mr. Loup has not alleged any facts to support a claim against Jefferson Parish. His failure to state a plausible claim suggests that the purpose of the amendment is merely to defeat diversity jurisdiction. This factor weighs against allowing the amendment.

---

[2] Of course, if it was later determined that AT&T and Deviney are not liable to the plaintiffs, then prescription will not have interrupted claims against joint tortfeasors. See Hurst v. Hilton Hotels Corp., 2013-0872 (La. App. 4 Cir. 12/18/13), 131 So. 3d 387, 391 ("If the timely sued defendants are determined not to be liable to the plaintiffs, the petition for damages does not interrupt prescription against those defendants who were not timely sued.").

### b. *Delay*

Mr. Loup's delay has been significant. The injury at issue occurred on or around Mr. Loup's own property. Yet he and his lawyer claim that they did not realize until recently—nearly three years later—that the hole was actually on property subject to Jefferson Parish's right of way. Although there is no evidence of bad faith, the Court finds this difficult to believe, especially given Mr. Loup's failure to allege any facts to support finding Jefferson Parish liable. This factor also weighs against allowing the amendment.

### c. *Significant Injury*

Considering that Mr. Loup has not advanced any facts to support finding Jefferson Parish liable, the Court does not find he would suffer significant injury if the amendment were not allowed. This factor weighs in favor of denying the amendment.

### d. *Conclusion*

Each of the <u>Hensgens</u> factors weighs against allowing the amendment. Accordingly, the Court finds that the proposed amendment should not be allowed.

## Conclusion

For the foregoing reasons, plaintiff's Motion for Leave to File Second Supplemental and Amending Petition for Damages (Rec. Doc. 23) is DENIED.

New Orleans, Louisiana, this 14th day of August, 2024.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge